NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180082-U

NO. 4-18-0082

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 17, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| JAKAELIN R. GREGORY, | ) | No. 17CF1328 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Defendant's argument the trial court failed to properly question the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) is forfeited and not reviewable pursuant to the plain-error doctrine because the evidence in this case is not closely balanced.

¶ 2   In December 2017, a jury found defendant, Jakaelin R. Gregory, guilty of theft from the person. Defendant appeals, arguing the trial court did not properly question the potential jurors at his trial, failing to comply with *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984), and Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We affirm.

¶ 3                I. BACKGROUND

¶ 4   On September 14, 2017, the State charged defendant by information with theft from the person (720 ILCS 5/16-1(a)(1)(A) (West 2016)), alleging he knowingly exerted unauthorized control over a money bag and its contents ($500 or less) from Ivory Curry with the

intent to permanently deprive him of the property.

¶ 5        Defendant's jury trial was held on December 13, 2017.  During *voir dire*, the trial court told the potential jurors:

>     "All right. Very well. Next series of questions, again, I'm going to attempt to try to explain some constitutional principles. I will have you put your hands up or not regarding this series of questions. The defendant is presumed to be innocent of the charges against him. This presumption remains with the defendant throughout the trial and is not to overcome unless by your verdict you find that the State has proven the defendant guilty beyond a reasonable doubt. Is there anybody here who has any difficulty or disagreement with this proposition of law, the presumption of innocence? If so, please put up your hand. I see no hands. Let the record reflect that there are no hands raised.
>
>     Next question, the State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains upon the State throughout the trial. Does anybody have a difficulty or disagreement with this proposition of law, the burden of proof? If so, please put up your hand. Again, let the record reflect there are no raised hands.
>
>     Next question. The defendant is not required to offer any evidence on his own behalf. Does anybody have a difficulty or disagreement with this principle of law? If so, please put up your hand. And again, let the record reflect there are no raised hands.
>
>     Final question, at least of this type. If the defendant does not testify, it cannot be held against him. Does anybody have any difficulty or disagreement

with this proposition of law, the right to remain silent? If so, please put up your hand. And again, let the record reflect there are no raised hands. And let the record reflect that all of the jurors understand and accept the [*Zehr*] principles." Defendant did not object to the way the trial court questioned the potential jurors with regard to the *Zehr* principles.

¶ 6        Ivory Curry testified he and his father run a vegetable stand in the summer selling vegetables his father raises. On August 12, 2017, he and his dad were working at the stand. At about 3:20 p.m., his father left to go pick more green beans. Around that time, two individuals rode by on bicycles. Curry recognized defendant as one of the individuals because defendant worked for Curry's father about four or five years earlier. Curry testified he did not know defendant's real name, but his street name was Kato.

¶ 7        The two men then came back on foot to the vegetable stand and asked whether Curry had any fruit. Curry quoted defendant the price on watermelon, which was the only fruit available, and defendant said he would talk to his grandmother to see if she wanted anything. Defendant later came back by himself, bought a cucumber, and left. Defendant then returned to the stand for a fourth time. While defendant was there, another customer arrived. Curry told defendant he needed to decide what he wanted to buy because of the other customer. Defendant then bought two bell peppers. While Curry was getting ready to help the other customer, defendant grabbed Curry's money bag out of his hand and ran down the alley. Curry had about $200 in the money bag.

¶ 8        Curry and the other customer tried to catch defendant but were unsuccessful. Curry called the police and reported the incident. When the police came to the stand, Curry was not able to provide defendant's name, but he knew defendant took the money. To his

- 3 -

knowledge, the money bag was never recovered. The police officers later came back to the stand, and Curry identified defendant through a photo lineup.

¶ 9 On cross-examination, Curry stated he could not think of defendant's name when the incident first occurred. Later, Oscar Ford, a man from the neighborhood, provided Curry with the name Kato. Defendant had worked for Curry's father four or five years earlier, but Curry was not present when his father hired defendant. Curry had trained defendant to run the stand.

¶ 10 Christopher Wiedel testified he went to the vegetable stand on August 12, 2017. He identified defendant as the other customer who was at the stand while he was there. Like Curry, Wiedel testified Curry told defendant he needed to purchase something or get going because Curry needed to help Wiedel. Defendant gave Curry a dollar or two for a pepper. While Curry was making change, defendant grabbed the money bag and ran. Wiedel originally stated Curry had set the money bag on the counter, and defendant grabbed the money bag off the counter. However, he also testified he was not sure if defendant grabbed the money bag out of Curry's hand or off the counter. Curry called the police who arrived within minutes, and Wiedel gave the police a statement.

¶ 11 Officer Derek Oakley of the Decatur Police Department testified he responded to the incident at the vegetable stand and spoke with Ivory Curry and Christopher Wiedel. Curry said he knew the person who took the money bag because the suspect used to work at the vegetable stand, but Curry could not remember defendant's name. Curry said he would ask around to try and figure out the suspect's name. Curry came back a short time later and said the suspect's name was Kato. Oakley matched the nickname Kato with defendant.

¶ 12 The defense did not present any witnesses.

¶ 13        The jury found defendant guilty.

¶ 14        On January 23, 2018, defendant filed a posttrial motion arguing the evidence was insufficient to prove defendant guilty beyond a reasonable doubt.

¶ 15        On January 24, 2018, the trial court held a hearing on defendant's posttrial motion, which the trial court denied and proceeded to sentencing.  The court sentenced defendant to three years in prison with one year of mandatory supervised release (MSR).

¶ 16        This appeal followed.

¶ 17                               II. ANALYSIS

¶ 18        Defendant argues the trial court failed to comply with *Zehr* and Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) because it failed to ask the prospective jurors if they both understood and accepted the principles found in Rule 431(b).  Rule 431(b) states:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

According to defendant, the trial court failed to ask the potential jurors whether they "understood" the principles.  Instead, the court asked whether the potential jurors had any "difficulty" or "disagreement" with the principles.  Whether a trial court complied with Rule

431(b) is reviewed *de novo*. *People v. Belknap*, 2014 IL 117094, ¶ 41, 23 N.E.3d 325.

¶ 19        Defendant argues "[a]sking jurors whether they have difficulty or disagreements with the principles may suffice to determine whether the jurors accept the principles, but those inquiries do not offer any insight into whether the jurors understand them." Citing *Belknap* and *People v. Wilmington*, 2013 IL 112938, 983 N.E.2d 1015, defendant argues the trial court erred by not asking the potential jurors whether they understood the *Zehr* principles. Defendant recognizes he forfeited this issue because he neither objected to the admonishments nor included the issue in a post-trial motion. However, defendant argues we should review the alleged error pursuant to the plain-error doctrine.

¶ 20        Our supreme court has stated:

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007).

A reviewing court first considers whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49, 89 N.E.3d 675. The State does not argue the trial court did not err in the manner it admonished the prospective jurors. Instead, the State contends the evidence was not closely balanced, which is the only avenue available to defendant in this case because Rule 431(b) errors are no longer recognized under the second prong of plain-error analysis. See

*Belknap*, 2014 IL 117094, ¶ 47.

¶ 21   Defendant argues the evidence in this case was closely balanced. According to defendant's brief:

> "The State's primary evidence consisted of testimony from two occurrence witnesses and their identification of [defendant] was called into serious question due to their inability to initially identify him and the conflicts between their versions of the events at issue. In addition, [defendant] made no incriminating statements to police and the State failed to introduce any physical evidence connecting [defendant] to the purportedly stolen items."

However, defendant's argument is inaccurate and misleading. While Curry could not identify defendant by name, he knew defendant before the incident because defendant had previously worked at the vegetable stand. Further, this was not a situation where the money bag was stolen by someone who ran by and grabbed the bag. Defendant had been by the stand multiple times that day and bought produce two times, including once immediately before the money bag was taken. Further, the conflicts between Curry and Wiedel's respective testimony were minor and insignificant. In addition, both Curry and Wiedel identified defendant at the trial, and Curry identified defendant in a photo lineup.

¶ 22   "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53. Applying this standard, the evidence in this case is not closely balanced.

¶ 23   Defendant's reliance on *Sebby* and *People v. Naylor*, 229 Ill. 2d 584, 893 N.E.2d 653 (2008), is misplaced as both of those cases are factually distinguishable because the

defendants in those cases offered evidence contradicting the State's case. In this case, defendant did not present an alibi or call any witnesses. While this is not fatal to his argument (*Piatkowski*, 225 Ill. 2d at 567, 870 N.E.2d at 411), his failure to do so combined with his failure to damage the credibility of the two eyewitnesses in this case (one of whom knew defendant prior to the offense) leads us to hold the evidence in this case was not closely balanced. As a result, we will not excuse defendant's forfeiture pursuant to the plain-error doctrine.

¶ 24                                 III. CONCLUSION

¶ 25         For the reasons stated, we affirm the trial court's judgment.

¶ 26         Affirmed.